UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID M. AND SHARON L.
SALEWSKE,

    *Plaintiffs,*                         CASE NO. 12-CV-12580

v.                                        DISTRICT JUDGE THOMAS L. LUDINGTON
                                          MAGISTRATE JUDGE CHARLES BINDER

CITIBANK, NA, *as Trustee for the Holders
of Bear Sterns Alt-A Trust, 2006-6 Mortgage
Pass-Through Certificates, Series 2006-6,*

    *Defendant.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**
(Doc. 7)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be **GRANTED** and the case be dismissed with prejudice in its entirety.

**II.    REPORT**

    **A.    Introduction**

This action was removed from the Cheboygan County Circuit Court, State of Michigan, on June 13, 2011. Plaintiffs' complaint alleges the following claims: (1) wrongful foreclosure under Mich. Comp. Laws § 600.3204 because there is no clear chain of title and, even if there were, Citibank is incapable of holding an interest in the property on behalf of a passive REMIC trust under Mich. Comp. Laws § 555.5; (2) wrongful foreclosure under Mich. Comp. Laws §

600.3204(1)(d) because Citibank does not own an interest in Plaintiff's note and it was not the servicer of Plaintiff's mortgage; (3) slander of title; (4) quiet title; (5) violation of the Truth in Lending Act ("TILA") under 15 U.S.C. § 1639, *et seq.*, based on the "double assignment of the same property by the same parties." (Doc. 1.) These claims all relate to the circumstances surrounding a mortgage loan and the published notice of the foreclosure sale of Plaintiffs' home, which was first published on May 17, 2012, stating that the foreclosure sale would commence on June 15, 2012. (Doc. 1 at Ex. 4; Doc. 7 at Ex. H.)

Contemporaneously with the complaint, Plaintiffs moved for an *ex parte* temporary restraining order ("TRO") to prevent the foreclosure sale from occurring on June 15, 2012. (Doc. 1 at 50.) It appears that a Cheboygan County Circuit Court judge granted the TRO and scheduled a hearing on the motion for preliminary injunction. (Doc. 7 at 14.) Before the hearing was held, however, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. (Doc. 1 at 2.)

On July 31, 2012, Defendant filed the instant dispositve motion. (Doc. 7.) Plaintiffs filed a response on August 20, 2012 (Doc. 8), and Defendant filed a reply on September 4, 2012. (Doc. 9.) Oral argument was held in this matter on September 18, 2012. Therefore, the motion is ready for report and recommendation.

**B.     Factual Background**

Plaintiffs' property is commonly known as 4498 S. River Road, Cheboygan, Michigan (the "property"). (Doc. 1 at 7.) Plaintiffs entered into the subject mortgage and related promissory note on May 25, 2006, in which Countrywide Home Loans, Inc., ("Countrywide") was described as the "Lender" and Mortgage Electronic Registration Systems, Inc., ("MERS") as the "mortgagee" and

2

"nominee for Lender and Lender's successors and assigns." (Doc. 1 at 17; Doc. 7 at Ex. B.) The promissory note was signed by Plaintiffs on the same day and stated that Plaintiffs owed Lender (America's Wholesale Lender) $620,000.00 plus interest. (Doc. 7 at Ex. C.)

On June 25, 2009, MERS "as nominee for Lender and Lender's assigns," assigned the mortgage to Defendant. (Doc. 1 at 39; Doc. 7 at Ex. D.) This assignment was recorded with the Cheboygan County Register of Deeds on July 1, 2009. (*Id.*) The second and duplicate assignment assigned the mortgage from MERS to Defendant on November 21, 2011. (Doc. 1 at 41; Doc. 7 at Ex. E.) This second assignment was recorded with the Cheboygan County Register of Deeds on December 5, 2011. (*Id.*) Plaintiffs do not argue with the fact that they failed to make the required payments, thereby causing the note to be accelerated and foreclosure proceedings to commence. (Doc. 7 at 13.)

A notice of foreclosure sale of Plaintiffs' home was first published on May 17, 2012, notifying that the foreclosure sale would commence on June 15, 2012. (Doc. 1 at Ex. 4; Doc. 7 at Ex. H.) As indicated above, contemporaneously with the complaint, Plaintiffs filed for an *ex parte* temporary restraining order ("TRO") to prevent the foreclosure sale from occurring on June 15, 2012 (Doc. 1 at 50) and the TRO was issued, staying the sale for fourteen days. (Doc. 7 at 14.) Before the preliminary injunction hearing was held, however, Defendant removed the case to this Court. (Doc. 1 at 2.) The foreclosure sale is now being adjourned on a week to week basis. (Doc. 7 at 14.)

    **C.**    **Motion Standards**

3

Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56(c). Since all of the claims are analyzed under the motion to dismiss standards, the motion will be treated as a motion to dismiss.

When deciding a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part

4

of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

### D.     Analysis & Conclusions

#### 1.     Invalid Foreclosure (Counts 1 and 2)

Defendant contends that Plaintiffs' mortgage was properly foreclosed and, thus, that the foreclosure by publication statute, Mich. Comp. Laws § 600.3204, was not violated. (Doc. 7 at 20-27.) In addition, Defendant argues that Plaintiffs lack standing to challenge the validity of the mortgage assignment. (*Id.* at 15-18, 26-27.) Defendant also contends that Plaintiffs' claim that Defendant is a trustee of a passive trust lacks merit (*id.* at 18-20) and that Plaintiffs' claim that the duplicate assignment somehow breaks the chain of title, disallowing foreclosure by advertisement, is a red herring. (*Id.* at 23-26.)

##### a.     The Assignment

I suggest that Defendant correctly asserts that Plaintiffs lack standing to challenge the validity of the assignments. In *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 Fed. App'x 97 (6th Cir. 2010), the Sixth Circuit held that "even if there were a flaw in the assignment, [the plaintiff] does not have standing to raise that flaw . . . [because] there is ample authority to support the proposition that 'a litigant who is not a party to an assignment lacks standing to challenge that assignment.'" *Id.* at 102 (citations omitted); *accord Thomas v. Mortgage Elec. Reg. Sys., Inc. (MERS)*, No. 11-15670, 2012 WL 834688, at *5 (E.D. Mich. Mar.

13, 2012) ("Plaintiff, as a non-party, cannot collaterally attack the MERS/U.S. Bank assignment"); *Shumake v. Deutsche Bank Nat'l Trust Co.,* No. 1:11-cv-353, 2012 WL 366923 (W.D. Mich. Feb. 2, 2012) (holding that the plaintiff lacked standing to challenge an assignment from Chase to Deutsche Bank because his injury was not fairly traceable to the assignment and the assignment, standing alone, did not cause him any injury).

Furthermore, even if Plaintiffs did have standing to challenge the assignments, I suggest that the result would be the same. *See Bakri v. Mortgage Elec. Reg. Sys. (MERS)*, No. 297962, 2011 WL 3476818, at *4 (Mich. App. Aug. 9, 2011) (assignment from MERS to New York Mellon was valid where the mortgage named MERS as nominee for the lender and the lender's successors and assigns because, as nominee, MERS had the power to assign the mortgage to New York Mellon.)[1] In this case, the mortgage provided that MERS was "nominee for Lender and Lender's successors and assigns" and that MERS was the "mortgagee under this Security Instrument." (Doc. 1 at 39; Doc. 7 at Ex. D.) Therefore, I suggest that MERS possessed the authority to assign the mortgage to Defendant. This result is consistent with Michigan law holding that contractual rights can generally be assigned unless assignment is clearly restricted. *See Talton v. BAC Home Loans Serv. LP*, No. 11-14512, 2012 WL 855975, at *6 (E.D. Mich. Mar. 7, 2012) (citing *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. Ct. App. 2004)). I therefore suggest that even if Plaintiffs had standing to challenge the validity of the assignments, the claim would fail.

---

[1] I note, however, that the *Bakri* analysis regarding the foreclosure by advertisement statute is no longer viable. *See Residential Funding Co., LLC v. Saurman*, 490 Mich. 490, 490 (2011) (reversing court of appeals opinion relied upon in *Bakri*); *Bowden v. American Home Mortgage Servicing, Inc.*, No. 10-12972, 2012 WL 628543, at *7 (E.D. Mich. Feb. 27, 2012) ("*Saurman* and, by extension, *Bakri*, were reversed by the Michigan Supreme Court"); *Luster v. Mortgage Elec. Reg. Sys. (MERS)*, No. 11-cv-14166, 2012 WL 124967 (E.D. Mich. Jan. 17, 2012) (Michigan Supreme Court's reversal in *Saurman* also "*sub silentio* reversed another Court of Appeals decision, *Bakri*").

6

**b.    Defendant's Authority to Foreclose by Advertisement**

Since I suggest that the assignment to Defendant is unassailable by the Plaintiffs who lack standing or, in the alternative, that the assignment was proper, the question then becomes whether Defendant, as assignee, possessed the authority to foreclose by advertisement under the relevant Michigan statute.

I suggest that Defendant's authority to foreclose (whether by advertisement or judicial proceeding) is established first in the language of the mortgage. The instant mortgage granted MERS a right to exercise its interests, including the right to foreclose and sell the property. (Doc. 1 at 17; Doc. 7 at Ex. B.) Michigan law also provides that once rights are assigned, the assignee stands in the same position as the assignor. *See Talton, supra*. I therefore suggest that once the assignment was made from MERS to Defendant, Defendant stood in the shoes of MERS and possessed all the rights and authority given to MERS, including the right to foreclose.

I further suggest that Defendant's authority to foreclose by advertisement is found in the relevant Michigan statute. The statute provides:

> (1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
>> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>>
>> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage . . . .
>>
>> (c) The mortgage containing the power of sale has been properly recorded.
>>
>> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.
>
> . . . .

(3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record of chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

(4) A party shall not commence proceedings under this chapter to foreclose a mortgage of property claimed as a principal residence . . . if 1 or more of the following apply:

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for the mortgagor to request, either directly or through a housing counselor, a meeting with the person designated under section 3205a(1)(c) under section 3205b has not expired.

(c) Within 30 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)9c) and 90 days have not passed after the notice was mailed. This subdivision does not apply if the mortgagor has failed to provide documents as required under section 3205b(2).

(d) Documents have been requested under section 3205(b) and the time for producing the documents has not expired.

(e) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

(f) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

(g) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

Mich. Comp. Laws §600.3204.[2]

    **i.    Subsection (1)(d)**

---

[2] "Mortgage holder" is defined as "the owner of the indebtedness or of an interest in the indebtedness that is secured by the mortgage." Mich. Comp. Laws § 600.3205(b). "Mortgage servicer" is defined as "the servicing agent of the mortgage." Mich. Comp. Laws § 600.3205(c).

As indicated above, subsection (1)(d) of section 3204 requires that the "party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Mich. Comp. Laws § 600.3204(1)(d). Although a Michigan Court of Appeals decision held that MERS, as nominee for the lender, could not meet the requirements of section 3204 because it did not have any interest in the promissory note, *Residential Funding Co. LLC v. Saurman*, 807 N.W.2d 412 (Mich. Ct. App. 2011), the Michigan Supreme Court summarily reversed the decision in lieu of granting appeal. *Residential Funding Co., L.L.C. v. Saurman*, 805 N.W.2d 183 (Mich. 2011). The Michigan Supreme Court expressed its concurrence with the dissenting opinion in the Court of Appeals' decision and stated:

> We clarify, however that MERS' status as an "owner of an interest in the indebtedness" does not equate to an ownership interest in the note. Rather, as record-holder of the mortgage, MERS owned a security lien on the properties, the continued existence of which was contingent upon satisfaction of the indebtedness. This interest in the indebtedness – i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness – authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d).
>
> Furthermore, we add that the Court of Appeals' conclusion to the contrary is inconsistent with established legal principles governing Michigan's real property law, and specifically foreclosure by advertisement. "Under the settled law of this State, the mortgage and the note are to be construed together."

*Residential Funding*, 805 N.W.2d at 183 (citation omitted).

Similarly, in the instant case, Defendant, as assignee, acquired all the rights and interests that MERS had under the mortgage. MERS was the "mortgagee" and the Lender Countrywide's "nominee for Lender and Lender's assigns," but since MERS had no interest in the promissory note, Defendant acquired no interest in the promissory note. However, the Michigan Supreme Court has made clear that the absence of an interest in the promissory note will not otherwise

9

divest a party with a record lien – i.e., a mortgage interest in the property – of the right to foreclose on that property by advertisement.

Here, the evidence shows that at the time of the sale, Defendant was the record holder of the mortgage[3] on Plaintiffs' property (Doc. 3 at Ex. 3) and, thus, was authorized to foreclose by advertisement. Mich. Comp. Laws § 600.3204(1)(d), (3); *Yunanova v. BAC Home Loans Servicing, LP*, No. 2:10-cv-14156, 2012 WL 441161, at *5 (E.D. Mich. Feb. 10, 2012) (dismissing claim under Mich. Comp. Laws § 600.3204 where MERS assigned mortgage to Wells Fargo and Wells Fargo commenced foreclosure).

Plaintiffs also argue that Bank of America, rather than Defendant, was the proper foreclosing party because Bank of America was the "servicer" who published the notice of foreclosure sale. (Doc. 8 at 8, Ex. 4.) The statute, however, authorizes foreclosure by the servicer of the mortgage *or* the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage. Mich. Comp. Laws § 600.3204(1)(d). Therefore, under the statute, both Defendant and Bank of America are authorized to foreclose. Here, Defendant was the foreclosing agent but even if Bank of America were the foreclosing agent, it too would be authorized to do so. I thus suggest that this argument neither advances Plaintiff's position nor undermines Defendant's authority to foreclose.

**ii.     Subsection (3)**

Subsection (3) of section 3204 states that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record of chain of title shall exist prior to the date

---

[3]To be the record holder of the mortgage, Defendant needed to record its mortgage interest before the scheduled date of sale, which it did. *See* Mich. Comp. Laws § 600.3204(3); *Kim v. JP Morgan Chase Bank*, ___ Mich. App. ___, 2012 WL 104463 (Jan. 12, 2012).

of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Compl. Laws § 600.3204(3).

Plaintiffs contend, as explained during oral argument, that no clear record of chain of title to the foreclosing party existed. Plaintiffs proffer two reasons why they claim the record chain of title was not established. Each will be addressed in turn. First, Plaintiffs contend that the duplicate assignment "is a break in the chain of title[.]" (Doc. 1 at 9.) Plaintiffs suggest that "[f]or MERS to have any rights to grant Citibank the mortgage, 'together with the note(s)' in the 2011 assignment it would have to show an assignment to it after 2009 and prior to the second assignment" but "[t]here is no record chain of title showing a return of the property to MERS or a granting of the 'note' after the first assignment between MERS and Citibank in 2009 and the second assignment from MERS to Citibank in 2011." (*Id.*)

Although Plaintiffs use the term "break" in the chain of title, that label does not fit the description given by Plaintiffs. Plaintiffs point out that after the first assignment from MERS to Defendant in 2009, MERS lost any mortgage ownership interest and, thus, without a reassignment of that interest back to MERS, MERS had no interest to assign to Defendant in 2011.[4] Although not expressly mentioned, this argument properly resurrects the venerable Latin maxim "nemo dat quod non habet," which translates to "one cannot give what one does not have." *See Mitchell v. Hawley*, 83 U.S. 544, 549, 21 L. Ed. 322, 16 Wall. 544 (1872). Thus, MERS had no interest to assign in 2011 since it already assigned all its interest in 2009 to Defendant. In other words, the second assignment between the same parties in 2011 was not necessary and had no legal consequence. Thus, the duplicate 2011 assignment had no effect on the record chain of title, rather

---

[4] An assignment divests the assignor of the rights assigned and transfers them to the assignee. However, if an assignment is invalid, the assignor maintains the rights. 6 Am Jur 2d, Assignments § 122, Jill Gustafson, J.D.

11

than the "break" Plaintiff argues. The valid first assignment in 2009 provided Defendant with the mortgage ownership interest it needed to foreclose by advertisement, and Defendant's record chain of title, recorded with the Cheboygan County Register of Deeds, was undisturbed.[5]

Even if the assignment in 2009 were challenged and deemed invalid, nothing happened to disturb the ownership interest MERS had in 2009, and MERS would have still had the interest when it assigned that interest to Defendant in 2011.[6] Either way, MERS assigned its mortgage ownership interest to Defendant and the record chain of title reveals that Defendant had the authority to foreclose by advertisement stemming either from the 2009 assignment if valid or from the 2011 assignment if the 2009 assignment were deemed invalid.

Plaintiffs request discovery to find other potentially unrecorded assignments that may have existed between 2009 and 2011; however, I suggest that such an exercise would be futile since the court's only concern regards the *record* chain of title. *See Livonia Properties Holdings,* 399 Fed. App'x at 100-01 (failure to record interim assignments in no way affected plaintiff's rights because "the only interests impaired by the lack of recordation were those of [the interim assignees] . . . [and h]ad either [of the interim assignees] attempted to foreclose, [plaintiff] would have a valid record-chain-of-title objection," but they did not).

I note that to hold otherwise would defeat the purpose of Michigan's race-notice recording act. *See Emad & Jullie, LLC v. Commerce First Finan., LLC*, No. 302459, 2012 WL 1605393, at *9 (Mich. Ct. App. May 8, 2012) (argument failed to acknowledge Michigan's race-notice statute and its corollary of "constructive notice [that] imputes upon a person all matters that are properly

---

[5] As indicated earlier in this R&R, Plaintiff lacks standing to challenge the validity of the assignments. I note, however, that Plaintiff does not substantively challenge the validity of the 2009 assignment.

[6] *See infra* n.5.

12

recorded, whether or not there is actual knowledge."); *Credit Based Asset Servicing & Securitization, LLC v. Flagstar Bank, FSB*, No. 273198, 2007 WL 866935, at *3 (Mich. Ct. App. Mar. 22, 2007) ("A mortgage is clearly a conveyance within the meaning of the recording acts," "Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests"); *Wells Fargo Bank, N.A. v. Huntington Nat'l Bank*, No. 264864, 2006 WL 664843, at *1 (Mich. Ct. App. Mar. 16, 2006) ("The clear import of these statutes, described as 'race-notice' statutes, is that the first instrument concerning real estate to be recorded takes priority over later-recorded instruments of whatever sort.").

Plaintiff's second argument is that even if there were a clear chain of title, "Citibank is incapable of holding an interest in the subject property on behalf of a passive REMIC trust"[7] under Michigan law. (Doc. 1 at 9.) The statute in question provides that

> [e]very disposition of lands, whether by deed or devise, hereafter made, except as otherwise provided in this chapter, shall be directly to the person in whom the right to possession and the profits shall be intended to be vested, and not to any other, to the use of, or in trust for, such person; and if made to 1 or more persons, in trust for, or to the use of another, no estate or interest, legal or equitable, shall vest in the trustee.

Mich. Comp. Laws § 555.5. I suggest that this statute is inapplicable because "the statute does not apply to conveyances to existing trusts, which occurred here, rather it pertains to conveyances that purport to create trusts without trust duties." *Carmack v. Bank of New York Mellon*, No. 12-cv-11669, 2012 WL 2389863, at *3 (E.D. Mich. June 25, 2012).

I further suggest that even if the statute were not peremptorily inapplicable, the result would be the same since the trust is not a passive trust. Passive trusts are those "where the trustee has no duties, and merely holds title for the beneficiary[;]" thus, legal title is vested in the beneficiary or

---

[7]REMIC is an acronym for "Real Estate Mortgage Investment Conduit."

13

holders of the trust. *Yousif v. Bank of New York Mellon*, No. 12-12507, 2012 WL 2403472, at *3 (E.D. Mich. June 26, 2012) (citations omitted). On the other hand, Michigan law has held that a trust is "active" where "the trustee is obligated to collect income from lands and pay the proceeds over to the beneficiaries." *Id.* (citations omitted). Since in this case, as in *Yousif*, Defendant "holds title to the property and is required to disburse proceeds to the investors holding pass-through certificates[,] [t]he court [should] conclude[] that the trust here is not a passive trust barred by Michigan Compiled Laws § 555.5." *Id.*

I therefore suggest that Defendant's motion to dismiss should be granted as to these claims.

### 2.     Slander of Title (Count 3)

The elements of a slander of title claim are: (1) falsity of statement, (2) malice or intent to harass, and (3) special damages. *B&B Invest. Group v. Gitler*, 581 N.W.2d 17 (Mich. Ct. App. 1998); Mich. Comp. Laws § 565.108. "Malice may not be inferred from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Scranton v. Dachille*, 463 N.W.2d 479, 486 (Mich. Ct. App. 1990). In the mortgage foreclosure context, these elements have been met where defendants falsely represented that the plaintiff defaulted when the plaintiff had never defaulted and where the trial court drew an adverse inference that the defendants acted with malice where the defendants did not testify or come forward with any explanation for their actions. *See Gipson v. Belvedere Constr., Inc.*, No. 296765, 2011 WL 2651866, at * 3-4 (Mich. Ct. App. July 7, 2011). Neither of these scenarios occurred here. In the instant case, Plaintiffs have conceded that they defaulted on their mortgage payments. Since Plaintiffs have not pleaded facts sufficient to support either the

falsity or malice elements, I suggest that Defendant's motion to dismiss should be granted on this claim as well.[8]

### 3.     Quiet Title (Count 4)

Defendant moves for dismissal of Plaintiffs' quiet title count, asserting that Plaintiffs have unclean hands because they admit that they failed to make the requisite payments, resulting in default and the initiation of foreclosure proceedings. (Doc. 7 at 30-31.) Under Michigan law, an action to quite title is "equitable in nature." Mich. Comp. Laws § 600.2932(5). The doctrine of unclean hands applies in equitable actions, including quiet title actions. *McFerren v. B&B Inv. Group*, 655 N. W.2d 779 (Mich. Ct. App. 2002). "The clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (*Id.* at 783 (citations omitted).) Where, as here, Plaintiffs received $620,000, failed to pay the debt as agreed and then "sought judicial assistance in avoiding [their] contractual obligations[,]" the doctrine of unclean hands applies to close the doors to equitable relief, such as quiet title. *See Yuille v. American Home Mort. Servs., Inc.*, No. 10-2564, 2012 WL 1914056, at *1-2 (6th Cir. May 29, 2012). I further suggest that even if the merits were addressed, Plaintiffs have not met their burden to establish a prima facie case of title free of valid liens. (*Id.*) I therefore suggest that this claim be dismissed.

### 4.     Truth in Lending Act (Count 5)

---

[8]Since the sheriff's deed that is the subject of the slander of title claim was filed on January 19, 2011, and the instant complaint was not filed within one year of that date, it appears that this claim is also untimely and could also be dismissed on that ground. Mich. Comp. Laws §§ 600.5805(9), 5827.

15

Under TILA, any private cause of action must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The instant complaint was filed in the Cheboygan County Circuit Court on June 1, 2012. (Doc. 1 at 6.) Plaintiffs allege a violation of TILA based upon Defendant's "failure to notify Plaintiff of the change in creditor[,]" citing § 1641(g). (Doc 1 at 14-15.) Since the assignment of the mortgage to Defendant occurred in June 2009, Plaintiffs' action is clearly time-barred as it falls outside the one year limitations period. I therefore suggest that Defendant's motion to dismiss the TILA claim should be granted.

Plaintiffs ask the Court to apply equitable tolling because "plaintiff's claim was concealed to them through the conduct of the defendant." (Doc. 8 at 16.) Plaintiffs contend that they "never learned about the existence of the trust until they were notified of the upcoming foreclosure by notice posted on their door." (*Id.*)[9] The doctrine of equitable tolling may be applied to TILA claims when the elements of the doctrine are satisfied. *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984). Equitable tolling requires a plaintiff to show that: (1) the defendant actively concealed its misconduct; (2) this concealment prevented the plaintiff from discovering the misconduct during the limitations period; and (3) the plaintiff exercised diligence in attempting to uncover the misconduct. *Ruth v. Unifund CCR Partners,* 604 F.3d 908, 910 (6th Cir. 2010). The June 25, 2009, assignment by MERS "as nominee for Lender and Lender's assigns" to Defendant as trustee was recorded with the Cheboygan County Register of Deeds on July 1, 2009. (Doc. 1 at 39; Doc. 7 at Ex. D.)[10] I suggest that this public recording defeats any claim that Defendant concealed its conduct and defeats any claim by Plaintiffs that they exercised diligence in

---

[9]The Court assumes that the trust referred to is the 2006-6 mortgage pass-through trust over which Defendant Citibank is trustee.

[10]I note that Plaintiffs did not argue that the second, duplicate assignment in November of 2011 restarted the limitation period clock or that this date should serve as .

16

attempting to uncover any alleged misconduct. I therefore suggest that equitable tolling is inappropriate on the instant facts, that Plaintiffs' TILA claim is barred by the limitation period, and that Defendant's motion to dismiss the TILA should be granted.

### E. Conclusion

For the reasons stated above, I suggest that Defendant's motion to dismiss should be granted as to all claims and that the case should be dismissed with prejudice in its entirety.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                         s/ Charles E Binder
                                         CHARLES E. BINDER
Dated: October 9, 2012                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  October 9, 2012                         By       s/Patricia T. Morris
                                                                Law Clerk to Magistrate Judge Binder